UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**RICHARD F. VENZON**,

    *Plaintiff,*

v.

**MARTIN O'MALLEY**, Commissioner of Social Security,

    *Defendant.*

Case No. 1:23-cv-1377-RCL

### MEMORANDUM OPINION

Plaintiff Richard F. Venzon brings this action under the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, challenging the determination by the Social Security Administration ("SSA") that he is not disabled. Mr. Venzon moves this Court to reverse and remand the disability determination made by the administrative law judge ("ALJ"). The Defendant, Martin O'Malley, Commissioner of Social Security,[1] opposes the motion and cross-moves for affirmance of SSA's final decision. After considering the motions and the entire record, the Court will **DENY** plaintiff's motion, **GRANT** defendant's motion, and **AFFIRM** the SSA's determination concerning Mr. Venzon's ineligibility for benefits.

### I. BACKGROUND

The Court will begin by reviewing the statutory and regulatory scheme, followed by Mr. Venzon's relevant medical history, and then the procedural history of this case.

---

[1] Plaintiff initially named the defendant as Kilolo Kijakazi, Acting Commissioner of Social Security. However, pursuant to Federal Rule of Civil Procedure 25(d), Ms. Kijakazi's successor is automatically substituted as a party. *See* Fed. R. Civ. P. 25(d).

1

### A. Statutory and Regulatory Scheme

Under the Social Security Act, an individual who is "disabled" is eligible to be paid benefits by the Social Security Administration. 42 U.S.C. § 1382. "An individual shall be considered disabled" if the individual is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Id.* § 1382c(a)(3)(A). To make a disability determination, "an ALJ gathers evidence, holds a hearing, takes testimony, and performs a five-step legal evaluation of the claimant using that evidence." *Davis v. Berryhill*, 272 F. Supp. 3d 154, 158 (D.D.C. 2017) (citing 20 C.F.R. § 416.920). Under this five-step, sequential inquiry, the ALJ determines whether:

> (1) the claimant is presently engaged in substantial gainful activity; (2) the claimant has a medically severe impairment or impairments; (3) the claimant's impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation; (4) the impairment prevents the claimant from performing her past relevant work; and (5) the claimant, in light of her age, education, work experience and Residual Functional Capacity ("RFC"), can still perform another job that is available in the national economy.

*Id.* at 158–59 (citing 20 C.F.R. § 416.920). RFC is "is designed to determine the claimant's uppermost ability to perform regular and continuous work-related physical and mental activities in a work environment." *Butler v. Barnhart*, 353 F.3d 992, 1000 (D.C. Cir. 2004).

The claimant bears the burden of proof at steps one through four of the inquiry. *See Callahan v. Astrue*, 786 F. Supp. 2d 87, 89 (D.D.C. 2011). The burden of proof shifts to the SSA at step five. *Id.* If the ALJ finds that the individual can adjust to other work based on her age, education, and RFC assessment, she is not disabled under the Social Security Act. 20 C.F.R. §§ 404.1520(h), 416.920(h).

### B. Factual Background

Mr. Venzon testified that from 1996 to 2018, he served in the United States Army. Administrative Record (AR) 37–38.[2]  He says he retired from the Army for medical reasons. AR 38.  Mr. Venzon alleges that he suffers from a host of physical and mental health conditions including lower back, knee, and foot pain; obstructive sleep apnea; hemoglobin H alpha thalassemia with anemia; pinguecula with benign conjunctival nevus of the right eye; tension headaches, tinnitus; post-traumatic stress disorder ("PTSD") with memory loss; and service-connected attention deficit hyperactivity disorder ("ADHD"), among other ailments.  *See* AR 43, 255, 605, 683–84.

### C. Procedural History

In January 2019, Mr. Venzon applied for benefits under the Social Security Act for alleged disability beginning in January of the previous year.  AR 15; 219–220.  The state agency determined Mr. Venzon was not disabled and denied his application upon initial consideration and reconsideration. AR 77, 85.  Mr. Venzon then requested a hearing before an ALJ.  AR 89–90.  On August 31, 2022, a hearing was held before ALJ Jeffrey Hatfield.  At the hearing, Mr. Venzon, who was represented by counsel, testified, as did a vocational expert.  AR 32–54.  The ALJ then issued a written decision, in which he determined that Mr. Venzon was not disabled because he could perform work existing in significant numbers in the national economy.  AR 27.

At step one, the ALJ determined that plaintiff was not engaged in substantial work activity. AR 17.  At step two, he assessed that Mr. Venzon's PTSD, thalassemia, bilateral planter fasciitis, bilateral knee strain, lumbosacral strain, and tension headaches (but not his other alleged health

---

[2] The Administrative Record can be found at ECF No. 4. When the Court refers to the Administrative Record, it will cite to the Bates number printed at the bottom of each page.

challenges) were severe impediments. AR 18–19. However, the ALJ concluded that these impairments did not reach the level of any of the impairment listings at step three. AR 19–21. The ALJ concluded from the record that Mr. Venzon "is independent in his activities of daily living" and that he "has had minimal regular mental health treatment since the alleged onset date." AR 21; *see also* AR 24. Before turning to step four, the ALJ assessed Mr. Venzon's RFC. *See* 20 C.F.R. § 404.1520(e). He determined that Mr. Venzon has the RFC to perform light work with certain limitations, such as only occasional interaction with the public. AR 21–22.[3] At step four, the ALJ determined that Mr. Venzon was unable to perform his past relevant work. AR 25. But at step five, the ALJ determined, based in part on the testimony of the vocational expert, that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." AR 26.

The Appeals Council denied Mr. Venzon's request for review, at which point the ALJ's decision became the Commissioner of Social Security's final decision. AR 1–3. Mr. Venzon then filed this action seeking review of the agency's decision, Compl., ECF No. 1, and moved for a judgment of reversal, Pl.'s Mot., ECF No. 5. The SSA opposed his motion and moved to affirm the agency's decision. Def.'s Mot., ECF No. 7. Mr. Venzon filed a reply. Pl.'s Reply, ECF No. 9. Both motions are now ripe for review.

---

[3] Specifically, the ALJ found "that the claimant has the residual functional capacity to perform light work as defined in 20 CFR [§] 404.1567(b) except lift and carry 20 pounds occasionally 10 pounds frequently; can stand and walk six hours in an eight hour day; can sit six hours in an eight hour day; pushing and pulling with the lower extremities, limit to occasional; permit occasional use of stairs and ramps, never ladders, ropes, or scaffolds; permit frequent balancing, occasional stooping, no kneeling, occasional crouching, no crawling; avoid concentrated exposure to hazardous machinery and unprotected heights; psychological limitations: permit only occasional changes to the work setting; rule out production rate pace work, i.e., no assembly line work; interaction with the public, permit occasional; and interaction with coworkers and supervisors, permit frequent." AR 21–22.

4

## II.     LEGAL STANDARDS

The Social Security Act grants federal district courts jurisdiction over civil cases that challenge the final decision of the SSA Commissioner. 42 U.S.C. § 405(g). The Court enters its judgment upon the pleadings and transcript of the record. *Id.*; *Igonia v. Califano*, 568 F.2d 1383, 1389 (D.C. Cir. 1977). In this way, "[a] district court sits in what is essentially an appellate role when it reviews the Commissioner's disability determination." *Grant v. Kijakazi*, 619 F. Supp. 3d 128, 135 (D.D.C. 2022) (citing *Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C. Cir. 1987)).

The Court's review of the ALJ's disability determination is limited to deciding whether the ALJ correctly applied the relevant legal standards and whether substantial evidence supported the ALJ's findings. 42 U.S.C. § 405(g); *Butler*, 353 F.3d at 999. "The plaintiff bears the burden of demonstrating that the Commissioner's decision [was] not based on substantial evidence or that incorrect legal standards were applied." *Settles v. Colvin*, 121 F. Supp. 3d 163, 169 (D.D.C. 2015) (alteration in original) (internal citation omitted).

Substantial evidence is "more than a mere scintilla" and "[i]t means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The substantial-evidence standard is "highly deferential." *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008) (Kavanaugh, J.) (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). "The reviewing court may neither reweigh the evidence presented to it nor replace the Commissioner's judgment concerning the credibility of the evidence with its own." *Goodman v. Colvin*, 233 F. Supp. 3d 88, 104 (D.D.C. 2017) (internal quotation marks and citation omitted). Put differently, a district court will uphold the ALJ's decision as long as the ALJ builds a "logical bridge" between the evidence and the ALJ's conclusions, enabling the

Court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 67 (D.D.C. 2006) (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)).

"If the ALJ is found to have applied the correct legal standards and met the substantial evidence threshold, the reviewing court may grant the Commissioner's motion for an affirmance of the disability determination." *Grant*, 619 F. Supp. 3d at 136 (citing *Hicks v. Astrue*, 718 F. Supp. 2d 1, 17 (D.D.C. 2010)). But "[i]f a court finds error in an ALJ's determination that a claimant was not disabled, it may reverse and remand, requiring the SSA to conduct further proceedings consistent with the law." *Id.* (citing *Jackson v. Barnhart*, 271 F. Supp. 2d. 30, 38 (D.D.C. 2002)).

### III.   DISCUSSION

Mr. Venzon presents several challenges to the ALJ's RFC assessment and consequent finding at step five that Mr. Venzon was not disabled. But the Court is not persuaded. The record contains substantial evidence to support the ALJ's conclusion that Mr. Venzon was not disabled under the meaning of the Social Security Act.

### A. The ALJ Did Not Err by Failing to Provide a Narrative Discussion or a Function-by-Function Assessment

Mr. Venzon argues that the ALJ erred in his RFC assessment because he failed to logically bridge the evidence to his conclusions concerning Mr. Venzon's mental and physical health limitations. *See* Pl.'s Br. 7–13, 18–21. Specifically, he contends that the ALJ did not present a narrative discussion identifying the evidence supporting his conclusions and did not engage in the required function-by-function analysis. Each argument fails.

The Court concludes that the ALJ provided a detailed narrative discussion. "The RFC assessment must include a narrative discussion describing how the evidence supports each

6

conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P, 1996 WL 374184 at *7. In making his RFC assessment, the ALJ considered Mr. Venzon's reported limitations, but he did take them on faith. Instead, he properly "explain[ed] how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8P, 1996 WL 374184 at *7. The ALJ wrote that Mr. Venzon had certain "severe impairments resulting in significant limitations," but that "the claimant's statements concerning the intensity, persistence and limiting effects of [Mr. Venzon's alleged] symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 23. He discussed Mr. Venzon's ability to be "independent in his activities of daily living" as demonstrated by his reported ability "to drive, use a taxi, use a computer, shop, care of his elderly mother, and interact with others, including a driver, cook, and maid who stays with him." AR 24. And he reasoned that "the intensity, persistence, and limiting effects alleged" were inconsistent with Mr. Venzon's "minimal regular mental health treatment since the alleged onset date" and the fact that his physical and mental health examinations had shown findings that were in many respects normal. AR 23–24. Mr. Venzon thus errs in arguing that the ALJ discounted contrary evidence without explanation. *See* Pl.'s Br. 12. Rather, the ALJ "explained which evidence he found credible and why." *Pinkney v. Astrue*, 675 F. Supp. 2d 9, 18 (D.D.C. 2009) (Lamberth, C.J.).

Based on Mr. Venzon's independence and the objective medical findings, the ALJ determined that Mr. Venzon had an RFC to perform certain light work with psychological limitations such as no production rate pace work and limited interaction with the public. AR 21–22. The ALJ "discuss[ed] [Mr. Venzon's] ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis" and "describe[d] the maximum amount

7

of each work-related activity the individual can perform," SSR 96-8P, 1996 WL 374184 at *7, as he explained that Mr. Venzon could perform work with certain "postural and environmental limitations" to accommodate his physical impairments and "psychological limitations on social interaction and production pace work" to accommodate his mental impairments, AR 24. Mr. Venzon is thus incorrect to portray the ALJ as "solely consider[ing] whether the objective medical evidence supported [Mr. Venzon's] physical limitations" and as failing to "explain how these medical findings supported his RFC finding." Pl.'s Br. 19. Rather, the ALJ "provided evidence of limitations and noted how the conclusions were reached for medical conditions and impairments the ALJ found credible." *Pinkney*, 675 F. Supp. 2d at 16. The Court therefore finds that the ALJ provided a thorough narrative discussion.

For that reason, the Court also determines that the ALJ did not err by not specifically addressing the "functions" set forth the in the SSA's regulations. Social Security Ruling 96-8p provides that the RFC assessment "is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96–8P, 1996 WL 374184 at *3 (July 2, 1996).[4] But the position that an ALJ must address in writing each work-related function "has consistently been rejected in this Circuit so long as the ALJ provides a

---

[4] The Second Circuit has explained:

> Before an ALJ classifies a claimant's RFC based on exertional levels of work (i.e., whether the claimant can perform sedentary, light, medium, heavy, or very heavy work), he "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945." [SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996)]. The functions described in paragraphs (b), (c), and (d) of 20 CFR §§ 404.1545 and 416.945 include physical abilities such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions; mental abilities such as understanding, remembering, carrying out instructions, and responding appropriately to supervision; and other abilities that may be affected by impairments, such as seeing, hearing, and the ability to tolerate environmental factors. *See* 20 C.F.R. §§ 404.1545, 416.945; SSR 96–8p, 1996 WL 374184, at *5–6.

*Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013).

8

thorough narrative discussion explaining how the record evidence supports his conclusions." *Colter v. Kijakazi*, No. 20-cv-0632 (CKK), 2022 WL 715218, at *8 (D.D.C. Mar. 10, 2022); *see also Kim M. v. Kijakazi*, No. 20-cv-2072 (GMH), 2021 WL 4033060, at *7 (D.D.C. Sept. 3, 2021) (same) (collecting cases). Since the ALJ provided a thorough narrative discussion, no function-by-function enumeration was required.

In short, the ALJ described the objective medical evidence, treatment history, and level of independence in activities of daily living, and explained how the evidence supported his conclusions. The ALJ sufficiently bridged the evidence to his conclusions concerning Mr. Venzon's health limitations.

### B. The ALJ Did Not Improperly Evaluate the Evidence

Mr. Venzon also assails the ALJ for how he assessed the evidence of Mr. Venzon's mental and physical health conditions. But "[t]he reviewing court may neither reweigh the evidence presented to it nor replace the Commissioner's judgment concerning the credibility of the evidence with its own." *Goodman*, 233 F. Supp. 3d at 104 (internal quotation marks and citation omitted). The Court concludes that each of Mr. Venzon's remaining arguments is without merit.

First, plaintiff argues that "[t]he activities of daily living cited by the ALJ did not show [he] was independent with regard to his mental health." Pl.'s Br. 13–15. He likewise asserts "[t]he activities of daily living cited by the ALJ did not show [he] was independent with regard to his physical health." *Id.* at 21–22. The ALJ cited the objective evidence that plaintiff is ambulatory with a normal gait and has the ability to, with minimal difficulty, don or doff shoes and trousers and pick items off the floor. AR 24. The ALJ also relied on the fact that Mr. Venzon "reported he is able to drive, use a taxi, use a computer, shop, care for his elderly mother, and interact with others, including a driver, cook, and maid who stays with him" and that he tends to an emotional

9

support dog. AR 24. According to Mr. Venzon, the ALJ erred in finding him independent by relying on the very measures taken by Mr. Venzon to overcome significant limitations on his ability to execute physical tasks or interact with other people. Pl.s' Br. 15, 21. But the ALJ did not overlook plaintiffs' reported limitations on his independence. *See* AR 22 ("He reported he does not want to deal with the public, so he goes out as little as possible."); AR 24 ("[H]e reported that his back pain had become more symptomatic and aggravated and interferes with his activities of daily living and mobility."). The ALJ simply relied on other facts to arrive at the reasonable conclusion that Mr. Venzon is independent day-to-day. Mr. Venzon's critique amounts to a simple disagreement with how the ALJ chose to assess the evidence. But however one might resolve the question in the first instance, the ALJ's decision is supported by substantial evidence because he relied on "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co.*, 305 U.S. at 229).

Next, Mr. Venzon contends that the ALJ erred in finding that he had failed to pursue mental health treatment. Pl.'s Br. 16–18. According to Mr. Venzon, the ALJ failed to consider *why* Mr. Venzon may not have sought treatment consistent with his subjective complaints. Pl's. Br. 16 (citing SSR 16-3P, 2017 WL 5180304, *9 (Oct. 25, 2017)). The Social Security Ruling cited by plaintiff provides:

> [I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints . . . we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not . . . seek treatment consistent with the degree of his or her complaints.

SSR 16-3p, 2017 WL 5180304, *9. Here, the ALJ observed that since the alleged onset date, Mr. Venzon had had "minimal regular mental health treatment." AR 21. Specifically, he noted that in October, 2019 Mr. Venzon reported having not seen a psychiatrist in over a year, that he visited a

10

psychiatrist three times between June 2020 and July 2022, and that his visits enabled his medications to be continued. AR 21. However, the ALJ apparently concluded that Mr. Venzon had not sought treatment consistent with the degree of his complaints because he did not actually require additional treatment. *See* AR 24 ("In July 2022, the claimant reported no major mental health concerns and just wanted to ensure that his medications were refilled."). In any event, the ALJ did not rely solely on Mr. Venzon's failure to pursue further treatment, but also observed that "mental status examination findings have shown generally cooperative and reasonable behavior, normal speech, intact memory, normal thought content, average fund of knowledge, normal, coherent thought process and association, good insight, and good impulse control." AR 23–24.

Finally, Mr. Venzon argues that the ALJ improperly found that he failed to pursue treatment for his physical health. Pl.'s Br. 23–24. He again contends that the ALJ found his treatment inconsistent with his subjective complaints without considering why Mr. Venzon may not have sought additional treatment. But the thrust of the ALJ's reasoning was not that Mr. Venzon's treatment was inconsistent with his complained-of physical limitations. Instead, it was that Mr. Venzon's "regular and conservative course [of treatment] with medication management and some physical therapy" was one of several factors supporting a conclusion that plaintiff has the residual function capacity to perform certain light work. AR 23–24.

Although Mr. Venzon may not agree with the ALJ's decision, that decision is supported by substantial evidence and will not be disturbed by the Court.

## IV.   CONCLUSION

The challenged ALJ decision concerning Mr. Venzon's ineligibility for disability benefits was based on substantial evidence. The Court will therefore **DENY** Mr. Venzon's motion for reversal, **GRANT** the SSA's motion for affirmance, and **AFFIRM** the ALJ's decision.

A separate order shall issue.

Date: 5/21/24

Royce C. Lamberth
United States District Judge